**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

ST. MARY'S REGIONAL MEDICAL CENTER
1808 W Main St.
Russellville, AR 72801

NORTH ALABAMA MEDICAL CENTER fka
ELIZA COFFEE MEMORIAL HOSPITAL
1701 Veterans Dr.
Florence, AL 35630

ANDALUSIA HEALTH fka COMMUNITY
HOSPITAL OF ANDALUSIA
849 S 3 Notch St.
Andalusia, AL 36420

VAUGHAN REGIONAL MEDICAL CENTER
LLC
1015 Medical Center Parkway
Selma, AL 36701

NORTH ALABAMA SHOALS HOSPITAL fka          CASE NO:  1:26-cv-2252
SHOALS HOSPITAL
201 W Avalon Ave.
Muscle Shoals, AL 35661

CANYON VISTA MEDICAL CENTER fka
RCHP – SIERRA VISTA INC.
5700 E. Highway 90
Sierra Vista, AZ   85635

HAVASU REGIONAL MEDICAL CENTER
101 Civic Center Ln.
Lake Havasu City, AZ 86403

VALLEY VIEW MEDICAL CENTER fka PHC-
FORT MOHAVE INC.
5330 South Highway 95
Fort Mohave, AZ  86426

NATIONAL PARK MEDICAL CENTER
1910 Malvern Ave.
Hot Springs, AR 71901

SALINE MEMORIAL HOSPITAL
1 Medical Park Dr.
Benton, AR 72015

CENTURA – ST. ELIZABETH HOSPITAL fka
PHC FORT MORGAN INC.
1000 Lincoln Street
Fort Morgan, CO  80701

ST. FRANCIS – EMORY HEALTHCARE fka
ST. FRANCIS HEALTH LLC
2122 Manchester Expy.
Columbus, GA 31904

ST. JOSEPH REGIONAL MEDICAL CENTER
fka ST. JOSEPH HOSPITAL LLC
415 6th St.
Lewiston, ID 83501

CLARK MEMORIAL HEALTH fka RHN
CLARK MEMORIAL HOSPITAL LLC
1220 Missouri Avenue
Jeffersonville, IN 47130

OTTUMWA REGIONAL MEDICAL CENTER
1001 E Pennsylvania Ave.
Ottumwa, IA 52501

CENTURA ST. CATHERINE HOSPITAL –
DODGE CITY fka DODGE HEALTHCARE
GROUP LLC
3001 Avenue A
Dodge City, KS  67801

MEADOWVIEW REGIONAL MEDICAL
CENTER
989 Medical Park Drive
Maysville, KY  41056

SPRING VIEW HOSPITAL LLC
320 Loretto Road
Lebanon, KY 40033

BOURBON COMMUNITY HOSPITAL
9 Linville Dr.
Paris, KY 40361

2

FLEMING COUNTY HOSPITAL fka FLEMING
MEDICAL CENTER LLC
55 Foundation Drive
Flemingsburg, KY 41041

LOGAN MEMORIAL HOSPITAL LLC
1625 Nashville Road
Russellville, KY  42276

CLARK REGIONAL MEDICAL CENTER fka
KENTUCKY HOSPITAL LLC
175 Hospital Drive
Winchester, KY  40391

GEORGETOWN COMMUNITY HOSPITAL
LLC
1140 Lexington Road
Georgetown, KY  40324

JACKSON PURCHASE MEDICAL CENTER fka
PINELAKE REGIONAL HOSPITAL LLC
1099 Medical Center Circle
Mayfield, KY  42066

LAKE CUMBERLAND REGIONAL HOSPITAL
LLC
305 Langdon Street
Somerset, KY  42503

OCHSNER – ST. MARY fka PHC-MORGAN
CITY, L.P.
1125 Marguerite St.
Morgan City, LA  70380

UP HEALTH SYSTEM MARQUETTE fka DLP
MARQUETTE GENERAL HOSPITAL LLC
850 W. Baraga Ave.
Marquette, MI  49855

UP HEALTH SYSTEM – PORTAGE fka
PORTAGE HOSPITAL LLC
500 Campus Drive
Hancock, MI  49930

3

BOLIVAR MEDICAL CENTER fka PHC-
CLEVELAND INC.
901 Highway 8 East
Cleveland, MS  38732

COMMUNITY MEDICAL CENTER
2827 Fort Missoula Rd.
Missoula, MT 59804

NORTHEAST NEVADA REGIONAL
HOSPITAL fka PHC INC. – ELKO
2001 Errecart Blvd.
Elko, NV 89801

MEMORIAL MEDICAL CENTER fka PHC –
LAS CRUCES INC.
2450 South Telshor Blvd.
Las Cruces, NM  88011

LOS ALAMOS MEDICAL CENTER fka PHC –
LOS ALAMOS INC.
3917 West Road
Los Alamos, NM  87544

RUTHERFORD REGIONAL HEALTH SYSTEM
fka DLP RUTHERFORD REGIONAL HEALTH
288 S. Ridgecrest St.
Rutherfordton, NC  28139

HARRIS REGIONAL HOSPITAL fka
DLP HARRIS REGIONAL HOSPITAL LLC
68 Hospital Road
Sylva, NC  28779

CENTRAL CAROLINA HOSPITAL fka DLP
CENTRAL CAROLINA MEDICAL CENTER
1135 Carthage Street
Sanford, NC  27330

DLP FRYE REGIONAL MEDICAL CENTER
420 North Center Street
Hickory, NC  28601

DLP WILSON MEDICAL CENTER LLC
1705 Tarboro Street Southwest
Wilson, NC  27893

4

DLP MARIA PARHAM MEDICAL CENTER
LLC
566 Ruin Creek Road
Henderson, NC  27536

DLP PERSON MEMORIAL HOSPITAL INC.
LLC
615 Ridge Road
Roxboro, NC  27573

DLP HAYWOOD REGIONAL MEDICAL
CENTER LLC
262 Leroy George Drive
Clyde, NC  28721

CLINTON MEMORIAL HOSPITAL
610 W. Main St.
Wilmington, OH  45177

SOUTHWESTERN MEDICAL CENTER
5602 SW Lee Blvd.
Lawton, OK  73505

WILLAMETTE VALLEY MEDICAL CENTER
2700 SE Stratus Ave.
McMinnville, OR  97128

CONEMAUGH NASON MEDICAL CENTER
fka NASON MEDICAL CENTER LLC
105 Nason Drive
Roaring Spring, PA 16673

CONEMAUGH MEMORIAL MEDICAL
CENTER fka DLP CONNEMAUGH
MEMORIAL MEDICAL CENTER LLC
1086 Franklin St.
Johnstown, PA  15905

CONEMAUGH MINERS MEDICAL CENTER
fka DLP CONNEMAUGH MINERS MEDICAL
CENTER, LLC
290 Haida Ave.
Hastings, PA  16646

5

CAROLINA PINES REG MED CTR
1304 W. Bobo Newsom Hwy.
Hartsville, SC  29550

MUSC HEALTH MEDICAL CENTER
DOWNTOWN fka
PROVIDENCE HOSPITAL LLC
2435 Forest Drive
Columbia, SC  29204

MUSC HEALTH KERSHAW MEDICAL
CENTER fka KERSHAW HEALTH
1315 Roberts Street
Camden, SC  29020

SUMNER REGIONAL MEDICAL CENTER
LLC
555 Hartsville Pike
Gallatin, TN 37066

SOUTHERN TENNESSEE REGIONAL
HEALTH SYSTEM PULASKI fka HILLSIDE
HOSPITAL LLC
1265 East College Street
Pulaski, TN 38478

SOUTHERN TENNESSEE REGIONAL
HEALTH SYSTEM – WINCHESTER fka
SOUTHERN TENNESSEE MEDICAL CENTER
LLC
185 Hospital Road
Winchester, TN  37398

STARR REGIONAL MEDICAL CENTER –
ATHENS fka ATHENS REGIONAL MEDICAL
CENTER
1114 W. Madison Ave.
Athens, TN  37303

SOUTHERN TENNESSEE HEALTH SYSTEM
LAWRENCEBURG fka CROCKETT HOSPITAL
LLC
1607 S. Locust Ave.
Lawrenceburg, TN  38464

LIVINGSTON REGIONAL HOSPITAL LLC
315 Oak St.
Livingston, TN  38570

PARIS REGIONAL HEALTH fka PARIS
REGIONAL MEDICAL CENTER
865 Deshong Dr.
Paris, TX  75460

PARKVIEW REGIONAL HOSPITAL fka
MEXIA PRINCIPAL HEALTHCARE LIMITED
514 S. Bonham St.
Mexia, Texas  76667

PALESTINE REGIONAL MEDICAL CENTER
fka PALESTINE PRINCIPAL HEALTHCARE
2900 South Loop 256
Palestine, TX  75801

ENNIS REGIONAL MEDICAL CENTER fka
PRHC-ENNIS LP
2201 West Lampasas Street
Ennis, TX  75119

CASTLEVIEW HOSPITAL LLC
300 North Hospital Drive
Price, UT  84501

ASHLEY REGIONAL MEDICAL CENTER
150 West 100 North
Vernal, UT  84078

FAUQUIER HEALTH fka FAUQUIER
MEDICAL CENTER LLC
500 Hospital Drive
Warrenton, VA  20186

CLINCH VALLEY MEDICAL CENTER INC.
6801 Gov. G.C. Peery Hwy.
Richlands, VA  24641

SOVAH HEALTH – DANVILLE fka
DANVILLE REGIONAL MEDICAL CENTER
142 South Main Street
Danville, VA  24541

7

WYTHE COUNTY COMMUNITY HOSPITAL,
LLC
600 West Ridge Road
Wytheville, VA  24382

DLP TWIN COUNTY REGIONAL
HEALTHCARE LLC
200 Hospital Drive
Galax, VA  24333

TRIOS HEALTH
900 S. Auburn St.
Kennewick, WA  99336

MULTICARE CAPITAL MEDICAL CENTER
fka CAPITAL MEDICAL CENTER
3900 Capital Mall Dr. SW
Olympia, WA  98502

LOGAN REGIONAL MEDICAL CENTER
20 Hospital Drive
Logan, WV  25601

RALEIGH GENERAL HOSPITAL LLC
1710 Harper Road
Beckley, WV  25801

WATERTOWN MEDICAL CENTER LLC
125 Hospital Drive
Watertown, WI  53098

SAGEWEST RIVERTON fka RIVERTON
MEMORIAL HOSPITAL LLC
2100 West Sunset Drive
Riverton, WY  82501
LOVELACE MEDICAL CENTER
DOWNTOWN
601 Dr Martin Luther King Jr Ave NE
Albuquerque, New Mexico 87102

LOVELACE WESTSIDE HOSPITAL
10501 Golf Course Rd NW
Albuquerque, New Mexico 87114

8

LOVELACE WOMEN'S HOSPITAL
4701 Montgomery Boulevard Northeast
Albuquerque, NM 87109

LOVELACE REGIONAL HOSPITAL
ROSWELL
117 East 19th Street
Roswell, NM 88201

BAILEY MEDICAL CENTER
10502 N 110th E Ave.
Owasso, OK 74055

HILLCREST HOSPITAL – PRYOR
111 N. Bailey St.
Pryor, OK 74361

HILLCREST HOSPITAL CLAREMORE
1202 North Muskogee Place
Claremore, OK 74017

HILLCREST HOSPITAL CUSHING
1027 East Cherry Street
Cushing, OK 74023

HILLCREST HOSPITAL HENRYETTA
2401 West Main Street
Henryetta, OK 74437

HILLCREST MEDICAL CENTER
1120 South Utica
Tulsa, OK 74104

HILLCREST HOSPITAL SOUTH
8801 South 101st East Avenue
Tulsa, OK 74133

TULSA SPINE & SPECIALTY HOSPITAL
6901 South Olympia Avenue
Tulsa, OK 74132

BAPTIST ST. ANTHONY'S HOSPITAL
1600 Wallace Boulevard
Amarillo, TX 79106

QUAIL CREEK SURGICAL HOSPITAL fka
PHYSICIANS SURGICAL HOSPITAL
6819 Plum Creek Drive
Amarillo, TX 79124

ASCENSION SACRED HEART BAY fka
BAY MEDICAL CENTER – SACRED HEART
615 N. Bonita Ave.
Panama City, FL  32401

HACKENSACK MERIDIAN
MOUNTAINSIDE MEDICAL CENTER fka
HACKENSACK UMC – MOUNTAINSIDE
1 Bay Ave, Montclair
NJ 07042

HACKENSACK MERIDIAN PASCACK
VALLEY MEDICAL CENTER fka
HACKENSACK UMC – PASCACK VALLEY
250 Old Hook Rd.
Westwood, NJ 07675

PORTNEUF MEDICAL CENTER
777 Hospital Way
Pocatello, ID 83201

SETON MEDICAL CENTER HARKER
HEIGHTS
850 W Central Texas Expy.
Harker Heights, TX 76548

THE UNIVERSITY OF KANSAS ST. FRANCIS
CAMPUS
1700 SW 7th St.
Topeka, KS 66606

UT HEALTH TYLER
1000 S. Beckham Ave.
Tyler, TX  75701

UT HEALTH JACKSONVILLE
501 S Ragsdale St.
Jacksonville, TX 75766

UT HEALTH CARTHAGE
409 Cottage Rd.
Carthage, TX 75633

UT HEALTH ATHENS
2000 S Palestine St.
Athens, TX 75751

UT HEALTH HENDERSON
300 Wilson St.
Henderson, TX 75652

UT HEALTH NORTH CAMPUS TYLER
11937 US-271
Tyler, TX 75708

GADSDEN REGIONAL MEDICAL CENTER
1007 Goodyear Ave.
Gadsden, AL  35903

MEDICAL CENTER ENTERPRISE
400 North Edwards Street
Enterprise, AL  36330

FLOWERS HOSPITAL
4370 West Main Street
Dothan, AL 36305

SOUTH BALDWIN RMC
1613 North McKenzie Street
Foley, AL 36535

GRANDVIEW MEDICAL CENTER
3690 Grandview Pkwy.
Birmingham, AL  35243

CRESTWOOD MEDICAL CENTER
One Hospital Drive
Huntsville, AL 35801

MAT-SU REGIONAL MEDICAL CENTER
2500 South Woodworth Loop
Palmer, AK 99645

NORTHWEST MEDICAL CENTER
6200 North La Cholla Boulevard
Tucson, AZ 85741

WESTERN ARIZONA RMC
2735 Silver Creek Road
Bullhead City, AZ 86442

ORO VALLEY HOSPITAL fka NORTHWEST
MEDICAL CENTER ORO VALLEY
1551 E. Tangerine Rd.
Oro Valley, AZ  85755

SILOAM SPRINGS MEMORIAL HOSPITAL
603 North Progress Avenue
Siloam Springs, AR 72761

NORTHWEST MEDICAL CENTER –
SPRINGDALE fka NORTHWEST MEDICAL
CENTER
609 West Maple Avenue
Springdale, AR 72764

MEDICAL CENTER OF SOUTH ARKANSAS
700 West Grove Street
El Dorado, AR 71730

NORTHWEST PHYSICIANS SPECIALTY
HOSP.
3873 Parkview Dr.
Fayetteville, AR  72703

ADVENTHEALTH LAKE WALES fka LAKE
WALES MEDICAL CENTER
410 South 11th Street
Lake Wales, FL 33853

NORTH OKALOOSA MEDICAL CENTER
151 East Redstone Avenue
Crestview, FL 32539

NORTHWEST HEALTH – LA PORTE fka
LAPORTE HOSPITAL
1331 State St.
La Porte, IN  46350

LUTHERAN HOSPITAL
7950 West Jefferson Boulevard
Fort Wayne, IN 46804

NORTHWEST HEALTH – PORTER fka
PORTER VALPARAISO HOSPITAL
85 East US Highway 6
Valparaiso, IN 46383

LUTHERAN DOWNTOWN HOSPITAL fka ST.
JOSEPH'S HOSPITAL
702 Van Buren St.
Fort Wayne, IN  46802

BLUFFTON REGIONAL MEDICAL CENTER
303 South Main Street
Bluffton, IN 46714

NORTHWEST HEALTH – STARKE fka
STARKE HOSPITAL
102 E. Culver Rd.
Knox, IN  46534

LUTHERAN KOSCIUSKO HOSPITAL fka
KOSCIUSKO COMMUNITY HOSPITAL
2101 East DuBois Drive
Warsaw, IN 46580

DUPONT HOSPITAL
2520 East Dupont Road
Fort Wayne, IN 46825

THE ORTHOPEDIC HOSPITAL
7952 West Jefferson Boulevard
Fort Wayne, IN 46804

NORTHERN LOUISIANA MEDICAL CENTER
401 East Vaughn Avenue
Ruston, LA 71270

MERIT HEALTH RIVER REGION fka RIVER
REGION HEALTH SYSTEM
2100 Highway 61 North
Vicksburg, MS 39183

13

MERIT HEALTH WESLEY fka WESLEY
MEDICAL CENTER
5001 Hardy Street
Hattiesburg, MS 39402

NORTHEAST REGIONAL MEDICAL CENTER
fka NORTHEAST REGIONAL
315 South Osteopathy
Kirksville, MO 63501

MOBERLY RMC
1515 Union Avenue
Moberly, MO 65270

SALEM MEDICAL CENTER – INSPIRA
HEALTH fka MEMORIAL HOSPITAL OF
SALEM
310 Woodstown Road
Salem, NJ 08079

EASTERN NEW MEXICO MEDICAL CTR
405 West Country Club Road
Roswell, NM 88201

CARLSBAD MEDICAL CENTER
2430 West Pierce Street
Carlsbad, NM 88220

COVENANT HEALTH HOBBS HOSPITAL fka
LEA REGIONAL MEDICAL CENTER
5419 North Lovington Highway
Hobbs, NM 88240

MOUNTAINVIEW REGIONAL MEDICAL
CENTER
4311 East Lohman Avenue
Las Cruces, NM 88011

ALLIANCEHEALTH WOODWARD fka
WOODWARD REGIONAL HOSPITAL
900 17th Street
Woodward, OK 73801

14

ALLIANCEHEALTH PONCA CITY fka PONCA
CITY MEDICAL CENTER
1900 North 14th Street
Ponca City, OK 74601

BERWICK HOSPITAL CENTER
701 East 16th Street
Berwick, PA 18603

COMMONWEALTH HEALTH – MOSES
TAYLOR HOSPITAL fka MOSES TAYLOR
700 Quincy Avenue
Scranton, PA 18510

COMMONWEALTH HEALTH - WILKES-
BARRE GENERAL HOSPITAL fka WILKES-
BARRE
575 North River Street
Wilkes-Barre, PA 18764

TYLER MEMORIAL HOSPITAL
5950 State Road 6 West
Tunkhannock, PA 18657

COMMONWEALTH HEALTH – REGIONAL
HOSPITAL OF SCRANTON fka REGIONAL
HOSPITAL OF SCRANTON
746 Jefferson Avenue
Scranton, PA 18510

MUSC HEALTH LANCASTER MEDICAL
CENTER fka SPRINGS MEMORIAL
HOSPITAL
800 West Meeting Street
Lancaster, SC 29720

MUSC HEALTH MARION MEDICAL CENTER
fka MARION REGIONAL HOSPITAL
2829 East Highway 76
Mullins, SC 29574

MUSC HEALTH FLORENCE MEDICAL
CENTER fka CAROLINAS HOSPITAL
SYSTEM
805 Pamplico Highway
Florence, SC 29505

TENNOVA HEALTHCARE – CLARKSVILLE
fka GATEWAY MEDICAL CENTER
651 Dunlop Lane
Clarksville, TN 37040

VANDERBILT BEDFORD HOSPITAL F/K/A
TENNOVA HEALTHCARE SHELBYVILLE fka
BEDFORD COUNTY- SHELBYVILLE-
HERITAGE
2835 US-231
Shelbyville, TN  37160

TENNOVA HEALTHCARE – CLEVELAND fka
SKYRIDGE MEDICAL CTR. EAST & WEST
2305 Chambliss Ave. NW
Cleveland, TN 37311

LAREDO MEDICAL CENTER
1700 East Saunders Street
Laredo, TX 78041

DETAR HEALTHCARE SYSTEM
506 East San Antonio Street
Victoria, TX 77901

HILL REGIONAL HOSPITAL
101 Circle Drive
Hillsboro, TX 76645

ST. JOSEPH HEALTH COLLEGE STATION
HOSPITAL fka COLLEGE STATION
MEDICAL CENTER
1604 Rock Prairie Road
College Station, TX 77845

SHANNON SOUTH fka SAN ANGELO
COMMUNITY MEDICAL CENTER
3501 Knickerbocker Road
San Angelo, TX 76904

NAVARRO REGIONAL HOSPITAL
3201 West Highway 22
Corsicana, TX 75110

WOODLAND HEIGHTS MEDICAL CENTER
505 South John Redditt Drive
Lufkin, TX 75904

HENDRICK MEDICAL CENTER SOUTH fka
ABILENE REGIONAL MEDICAL CENTER
6250 US Highway 83
Abilene, TX 79606

HENDRICK MEDICAL CENTER
BROWNWOOD fka BROWNWOOD
REGIONAL MEDICAL CENTER
1501 Burnet Drive
Brownwood, TX 76801

LAKE GRANBURY MEDICAL CENTER fka
LAKE GRANBURY HOSPITAL
1310 Paluxy Road
Granbury, TX 76048

LONGVIEW REGIONAL MEDICAL CENTER
2901 North Fourth Street
Longview, TX 75605

BON SECOURS – SOUTHSIDE MEDICAL
CENTER fka SOUTHSIDE RMC
200 Medical Park Blvd.
Petersburg, VA 23805

BON SECOURS – SOUTHHAMPTON
MEDICAL CENTER fka SOUTHAMPTON
MEMORIAL HOSPITAL
100 Fairview Drive
Franklin, VA 23851

BON SECOURS – SOUTHERN VIRGINIA
MEDICAL CENTER fka SOUTHERN
VIRGINIA RMC
727 North Main Street
Emporia, VA 23847

CAMC GREENBRIER VALLEY MEDICAL
CENTER fka GREENBRIER VALLEY
MEDICAL CENTER
1320 Maplewood Avenue
Ronceverte, WV 24970

17

BLUEFIELD REGIONAL MEDICAL
CENTER
500 Cherry Street
Bluefield, WV 24701

CEDAR PARK REGIONAL MEDICAL
CENTER
1401 Medical Parkway
Cedar Park, TX 78613

BAYFRONT HEALTH ST. PETERSBURG fka
BAYFRONT  MEDICAL CENTER
701 Sixth Street South
Saint Petersburg, FL  33701

SHOREPOINT HEALTH PUNTA GORDA fka
CHARLOTTE REGIONAL MEDICAL CENTER
809 E. Marion Ave.
Punta Gorda, FL  33950

SHOREPOINT HEALTH VENICE fka VENICE
REGIONAL MEDICAL CENTER
540 The Rialto
Venice, FL 34285

BRAVERA HEALTH BROOKSVILLE fka
BROOKSVILLE REGIONAL HOSPITAL
17240 Cortez Boulevard
Brooksville, FL 34601

SHOREPOINT HEALTH PORT CHARLOTTE
fka PEACE RIVER REGIONAL MEDICAL
CENTER
2500 Harbor Boulevard
Port Charlotte, FL  33952

SHANDS LAKESHORE REGIONAL MED CTR
368 Northeast Franklin Street
Lake City, FL 32055

SANTA ROSA MEDICAL CENTER
6002 Berryhill Road
Milton, FL 32570

ADVENTHEALTH HEART OF FLORIDA fka
HEART OF FLORIDA REGIONAL MEDICAL
CENTER
40100 United States Highway 27
Davenport, FL 33837

LOWER KEYS MEDICAL CENTER
5900 College Road
Key West, FL 33040

BRAVERA HEALTH SEVEN RIVERS fka
SEVEN RIVERS REGIONAL MEDICAL
CENTER
6201 North Suncoast Boulevard
Crystal River, FL 34428

PHYSICIANS REGIONAL MEDICAL CENTER
6101 Pine Ridge Road
Naples, FL 34119

ORLANDO HEALTH ST. CLOUD HOSPITAL
fka ST. CLOUD REGIONAL MEDICAL
CENTER
2906 17th Street
Saint Cloud, FL 34769

EAST GEORGIA REGIONAL MEDICAL
CENTER
1499 Fair Road
Statesboro, GA 30458

MERIT HEALTH BILOXI fka BILOXI
REGIONAL MEDICAL CENTER
150 Reynoir Street
Biloxi, MS 39530

MERIT HEALTH MADISON fka MADISON
REGIONAL MEDICAL CENTER
161 River Oaks Drive
Canton, MS 39046

MERIT HEALTH CENTRAL fka CENTRAL
MISSISSIPPI MEDICAL CENTER
1850 Chadwick Dr.
Jackson, MS  39204

MERIT HEALTH NATCHEZ fka MERIT
NATCHEZ
54 Seargent Prentiss Drive
Natchez, MS 39120

MERIT HEALTH RANKIN fka CROSSGATES
RIVER OAKS HOSPITAL
350 Crossgates Blvd.
Brandon, MS  39042

MERIT HEALTH WOMAN'S HOSPITAL fka
WOMAN'S HOSPITAL AT RIVER OAKS
1026 N. Flowood Dr.
Flowood, MS  39232

MERIT HEALTH RIVER OAKS fka RIVER
OAKS HOSPITAL
1030 River Oaks Drive
Flowood, MS 39232

POPLAR BLUFF REGIONAL MEDICAL
CENTER
3100 Oak Grove Road
Poplar Bluff, MO 63901

LAKE NORMAN REGIONAL MEDICAL
CENTER
171 Fairview Road
Mooresville, NC 28117

DAVIS REGIONAL MEDICAL CENTER
218 Old Mocksville Road
Statesville, NC 28625

ALLIANCEHEALTH DURANT fka MEDICAL
CENTER OF SOUTHEAST OKLAHOMA
1800 University Blvd.
Durant, OK  74701

ALLIANCEHEALTH CLINTON fka INTEGRIS
CLINTON
100 North 30th Street
Clinton, OK  73601

SSM HEALTH ST. ANTHONY HOSPITAL –
MIDWEST fka MIDWEST REGIONAL
MEDICAL CENTER
2825 Parklawn Drive
Midwest City, OK 73110

SSM HEALTH ST. ANTHONY HOSPITAL –
SHAWNEE, SEMINOLE CAMPUS fka
INTEGRIS SEMINOLE
2401 W. Wrangler Blvd.
Seminole, OK  74868

MUSC HEALTH CHESTER MEDICAL
CENTER fka CHESTER REGIONAL MEDICAL
CENTER
One Medical Park Drive
Chester, SC 29706

TENNOVA - LAFOLLETTE MEDICAL
CENTER
923 East Central Avenue
LaFollette, TN 37766

TENNOVA - JEFFERSON MEMORIAL
HOSPITAL
110 Hospital Drive
Jefferson City, TN 37760

TENNOVA – NORTH KNOXVILLE MEDICAL
CENTER fka TENNOVA - PHYSICIANS
REGIONAL MEDICAL CENTER
7565 Dannaher Drive
Powell, TN  37849

VANDERBILT TULLAHOMA –HARTON
HOSPITAL fka HARTON REGIONAL
MEDICAL CENTER
1801 North Jackson Street
Tullahoma, TN 37388

TENNOVA - NEWPORT MEDICAL CENTER
435 Second Street
Newport, TN 37821

21

VANDERBILT WILSON COUNTY HOSPITAL
fka UNIVERSITY MEDICAL CENTER
1411 West Baddour Parkway
Lebanon, TN 37087

DELTA HEALTH SYSTEM – NORTHWEST
REGIONAL fka MERIT HEALTH
NORTHWEST MISSISSIPPI
1970 Hospital Drive
Clarksdale, MS 38614

CHEROKEE MEDICAL CENTER fka MARY
BLACK – GAFFNEY
1530 North Limestone Street
Gaffney, SC 29340

SPARTANBURG MEDICAL CENTER – MARY
BLACK CAMPUS fka MARY BLACK-
SPARTANBURG
1700 Skylyn Drive
Spartanburg, SC 29307

TENNOVA LAKEWAY REGIONAL
HOSPITAL fka TENNOVA – LAKEWAY
726 McFarland Street
Morristown, TN 37814

BAPTIST HEALTH FORT SMITH fka SPARKS
HEALTH SYSTEM
1001 Towson Avenue
Fort Smith, AR 72901

BAPTIST HEALTH VAN BUREN fka SPARKS
– VAN BUREN
211 Crawford Memorial Drive
Van Buren, AR  72956

DEKALB REGIONAL MEDICAL CENTER
200 Medical Center Drive
Fort Payne, AL 35968

FORREST CITY MEDICAL CENTER
1601 Newcastle Road
Forrest City, AR 72335

HELENA RMC
1801 Martin Luther King Drive
Helena, AR 72342

WATSONVILLE COMMUNITY HOSPITAL
75 Nielson Street
Watsonville, CA 95076

BARSTOW COMMUNITY HOSPITAL
820 East Mountain View Street
Barstow, CA 92311

FANNIN REGIONAL HOSPITAL
2855 Old Highway 5, North
Blue Ridge, GA 30513

GALESBURG COTTAGE HOSPITAL
695 North Kellogg Street
Galesburg, IL 61401

VISTA MEDICAL CENTER EAST
1324 North Sheridan Road
Waukegan, IL 60085

METROSOUTH MEDICAL CENTER
12935 South Gregory Street
Blue Island, IL 60406

GATEWAY REGIONAL MEDICAL CENTER
2100 Madison Ave
Granite City, IL 62040

HEARTLAND REGIONAL MEDICAL CENTER
3333 W. DeYoung St.
Marion, IL 62959

CROSSROADS COMMUNITY HOSPITAL
8 Doctors Park Road
Mount Vernon, IL 62864

PAINTSVILLE ARH HOSPITAL fka PAUL B.
HALL REGIONAL MEDICAL CENTER
625 James S. Trimble Boulevard
Paintsville, KY 41240

THREE RIVERS MEDICAL CENTER
2485 Highway 644
Louisa, KY 41230

KENTUCKY RIVER MEDICAL CENTER
540 Jett Drive
Jackson, KY 41339

ALTA VISTA REGIONAL HOSPITAL
104 Legion Drive
Las Vegas, NM 87701

MARTIN GENERAL HOSPITAL
310 S McCaskey Rd.
Williamston, NC 27892

MCKENZIE-WILLAMETTE MEDICAL
CENTER
1460 G St.
Springfield, OR 97477

HENDERSON COUNTY COMMUNITY
HOSPITAL
200 W Church St.
Lexington, TN  38351

SCENIC MOUNTAIN MEDICAL CENTER
1601 W 11th Pl.
Big Spring, TX 79720

MOUNTAIN WEST MEDICAL CENTER
2055 N Main St.
Tooele, UT 84074

EVANSTON REGIONAL HOSPITAL fka
EVANSTON HOSPITAL
190 Arrowhead Drive
Evanston, WY  82930

JOHN D. ARCHBOLD MEMORIAL HOSPITAL
915 Gordon Ave.
Thomasville, GA 31792

ARCHBOLD GRADY GENERAL HOSPITAL
fka GRADY MEMORIAL HOSPITAL
1155 5th St SE
Cairo, GA 39828

       Plaintiffs,

v.

ROBERT F. KENNEDY, JR., Secretary,
United States Department of Health and
Human Services
200 Independence Avenue, S.W.
Washington, D.C.  20201,

       Defendant.

## COMPLAINT

The above-captioned Plaintiff hospitals (collectively, the "Hospitals"), by and through their undersigned attorneys, bring this action against defendant Robert F. Kennedy, Jr., in his official capacity as the Secretary (the "Secretary") of the United States Department of Health and Human Services ("HHS"), and state as follows:

## INTRODUCTION

1.     The Hospitals challenge their Medicare inpatient hospital payments for Federal Fiscal Year ("FFY") 2019 as being unlawfully understated because the Secretary calculated them using a "standardized amount" that was invalidly low because of an embedded error from the Secretary's original implementation of the Medicare Hospital Inpatient Prospective Payment System ("IPPS") in FFY 1984.

2.     "Standardized amounts" are the fundamental methodological building block that the Secretary uses to calculate IPPS payments. The Medicare Act provisions implementing IPPS expressly required the Secretary to base his calculation of the original standardized amounts on the average "costs per discharge" from a base year.  Instead of following this non-discretionary

25

directive, the Secretary violated the statute and acted arbitrarily and capriciously by including patient *transfers* in his "costs per discharge" calculation. This error caused an understatement of the original IPPS standardized amounts. Moreover, the Secretary's error was embedded into the IPPS standardized amounts going forward because the Secretary calculates the standardized amount for each FFY by starting with and updating the prior year's standardized amount. Although fully aware of his error in calculating the FFY 1984 standardized amounts, and the carry-forward effect of that error, the Secretary has refused to correct for that error in subsequent IPPS rulemakings setting the standardized amounts and resulting IPPS payment rates, including for FFY 2019.

3.      Many of these Hospitals have pursued this substantive issue by filing administrative appeals with the Provider Reimbursement Review Board ("PRRB" or "Board") dating back as far as 2005. Now, more than 20 years after the Hospitals began asserting these claims—and more than 40 years after the Secretary's original error—the PRRB has finally begun to certify this issue for judicial review of the merits. As set forth below, the Hospitals request that the Court, *inter alia*, declare that the standardized amount for FFY 2019 is lower than required by statute and order the Secretary to recalculate the Hospitals' IPPS payments for that FFY to remove the embedded effect of his error in calculating the original FFY 1984 standardized amounts.

**JURISDICTION AND VENUE**

4.      This action arises under Title XVIII of the Social Security Act, 42 U.S.C. § 1395 *et seq.* (the "Medicare Act"), the Administrative Procedure Act, 5 U.S.C. § 551 *et seq.* (the "APA"), and other authorities.

5.      This Court has jurisdiction under 42 U.S.C. § 1395oo(a)(1)(A)(ii), 42 U.S.C. § 1395oo(f)(1), 28 U.S.C. § 1331, 28 U.S.C. § 1361, and 28 U.S.C. § 1651.

26

6.    Venue is proper in this judicial district under 42 U.S.C. § 1395oo(f)(1) and 28 U.S.C. § 1391(e).

**PARTIES**

7.    At all times relevant to this action, the Hospitals qualified as participating general acute care hospital providers under the Medicare program. The Hospitals are reimbursed under IPPS and paid according to the standardized amounts published by the Secretary in annual IPPS rulemakings. During the relevant period under appeal, each of the Hospitals was owned by one of the following healthcare systems: LifePoint Health, Inc. d/b/a LifePoint Health; Ardent Health Services, Inc.; CHSPSC, LLC d/b/a Community Health Systems; Quorum Health; and Archbold Medical Center, Inc. The Hospitals with their Medicare provider numbers are set forth in the Schedules of Providers included in Exhibit 1 hereto. Some of the Hospitals have been known by various names over the years; they can be identified definitively by their Medicare provider numbers listed in Exhibit 1.

8.    Defendant Robert F. Kennedy, Jr., as Secretary of HHS, is the federal official responsible for administration of the Medicare program. The Secretary has delegated administrative responsibility over the Medicare program to the Centers for Medicare & Medicaid Services ("CMS").[1] The Secretary is sued in his official capacity only. References to the Secretary include his predecessors, successors, and subordinate agencies and officials.

---

[1] Before June 14, 2001, CMS was known as the Health Care Financing Administration. In this Complaint, the Hospitals refer to the agency as CMS even for events arising before June 14, 2001.

## LEGAL AND REGULATORY BACKGROUND

### A.    General Background of the Medicare Program

9.    The Medicare Act establishes a system of health insurance for the aged, disabled, and individuals with end-stage renal disease. 42 U.S.C. § 1395 *et seq.* The Medicare program is federally funded and administered by the Secretary through CMS and its contractors. 42 U.S.C. § 1395kk; 42 Fed. Reg. 13,282 (Mar. 9, 1977). The Secretary, the federal official responsible for administering the Medicare program, has delegated that responsibility to CMS, an agency within HHS, and CMS's contractors. *Id.*

10.    The Medicare Act requires that "[n]o rule, requirement, or other statement of policy . . . that establishes or changes a substantive legal standard governing the scope of benefits [or] the payment for services . . . [under Medicare] shall take effect unless it is promulgated by the Secretary by regulation . . . ." 42 U.S.C. § 1395hh(a)(2). Thus, the Medicare Act prohibits the application of any rule or policy that establishes or changes a substantive legal standard governing the payment for service, unless it is promulgated by the Secretary through notice-and-comment rulemaking. In addition, the Medicare Act specifies that where a final rule "is not a logical outgrowth of a previously published notice of proposed rulemaking . . . , such provision shall be treated as a proposed regulation and shall not take effect." 42 U.S.C. § 1395hh(a)(4); *see also Azar v. Allina Health Services*, 587 U.S. 566 (2019).

11.    This case involves Part A of the Medicare program, which provides coverage and payment for, among other things, inpatient hospital services on a fee-for-service basis. 42 U.S.C. § 1395c *et seq*. Part A services are furnished to Medicare beneficiaries by "providers" of services—including the Hospitals—that have entered into written provider agreements with the Secretary, under 42 U.S.C. § 1395cc, to furnish inpatient and outpatient hospital services to Medicare

beneficiaries. CMS pays providers participating in Part A of the Medicare program through Medicare Administrative Contractors ("MACs"), which are agents of the Secretary.

**B.      Implementation of IPPS**

12.      Effective with the start of FFY 1984 on October 1, 1983, Congress significantly changed how Medicare pays acute care hospitals for inpatient hospital operating costs by enacting statutes requiring the Secretary to create and implement a Medicare hospital inpatient prospective payment system, commonly known as "IPPS."

13.      Previously, Medicare reimbursed hospitals for the operating costs related to providing inpatient hospital services to Medicare beneficiaries based on their "reasonable costs" of delivering that care. In general, under the "reasonable cost" system, the more costs that a hospital incurred, the more Medicare payment it received.

14.      Under IPPS, Medicare payments for hospital operating costs are not based directly on the costs actually incurred by a particular hospital. Rather—in order to incentivize hospitals to reduce costs—they receive a fixed payment for each patient they treat and subsequently discharge, based on predetermined, nationally applicable rates subject to certain payment adjustments. 42 U.S.C. § 1395ww(d)(1)-(5); 42 C.F.R. Part 412.

**C.      How IPPS Payments Are Calculated**

15.      The fundamental building block for IPPS payments is the base payment rate referred to as the "standardized amount," which roughly represents the national average cost of a typical inpatient course of treatment. Stated simply, IPPS payments are calculated by multiplying the standardized amount by a certain weighting factor reflecting the relative cost of treatment associated with a certain type of diagnosis (known as a diagnosis-related group or "DRG) and other factors. 42 U.S.C. § 1395ww(d)(1)-(2). Although the final amount of a given IPPS payment depends on a variety of factors, the applicable standardized amount is always the starting point.

29

16.     Before each FFY, the Secretary sets the IPPS standardized amount and payment rates through notice-and-comment rulemaking published in the Federal Register. *See* 42 U.S.C. § 1395ww(e)(4)-(5). The Secretary does not recalculate the standardized amount from scratch each year. "Instead, following Congress's directive, [the Secretary] calculated the standardized amount for a base year [FFY 1984] and has since carried that figure forward, updating it annually for inflation." *Cape Cod Hosp. v. Sebelius*, 630 F.3d 203, 205 (D.C. Cir. 2011); *see also* 42 U.S.C. § 1395ww(d).

**D.     Statutory Requirements for Calculating the Inaugural IPPS Standardized Amounts**

17.     The Medicare Act provisions creating IPPS required the Secretary to follow a specific eight-step process for calculating the inaugural IPPS standardized amounts and payment rates. *See* 42 U.S.C. § 1395ww(d)(2)(A)-(H); *see also St. Mary's*, No. 1:23-cv-1594-RCL, 2024 WL 5186641, at *2-3 (D.D.C. Dec. 20, 2024) ("*St. Mary's I*").

18.     Step 1 required the Secretary to "determine the allowable operating costs *per discharge* of inpatient hospital services for [each] hospital for the most recent cost reporting period for which data are available." *Id.* § 1395ww(d)(2)(A) (emphasis added). This required "costs per discharge" figure served as the foundational component of the inaugural IPPS standardized amounts and payment rates.

19.     Step 2 required the Secretary to update the Step 1 "costs per discharge" figures for inflation from the base year (*i.e.*, the "most recent cost reporting period for which data are available") to FFY 1984. *Id.* § 1395ww(d)(2)(B).

20.     Step 3 required the Secretary to "standardize" the updated amounts to remove the effect of certain variations among hospitals (*e.g.*, indirect medical education costs, average wage levels, and case mixes). *Id.* § 1395ww(d)(2)(C).

21.    Step 4 required the Secretary to group these figures to compute separate average standardized amounts for urban and rural categories for each of nine regions of the country. *Id.* § 1395ww(d)(2)(D).[2]

22.    Step 5 required the Secretary to apply percentage adjustments to these average standardized amounts to account for certain issues, *e.g.*, a reduction of the standardized amounts to fund estimated additional payments for high-cost outlier cases. *Id.* § 1395ww(d)(2)(E).

23.    Step 6 required the Secretary to adjust the standardized amounts as necessary to implement the statute's budget neutrality requirement applicable to FFY 1984—*i.e.*, that aggregate reimbursements under IPPS for FFY 1984 would be no greater or less than the aggregate payments that would have been made under the prior reasonable cost system. *Id.* §§ 1395ww(d)(2)(F), 1395ww(e)(1)(B).[3]

24.    Step 7 called for the Secretary to compute DRG-specific rates for urban and rural hospitals in the United States and each region. *Id.* § 1395ww(d)(2)(G).

25.    Step 8, finally, required the Secretary to adjust for different wage levels, *id.* § 1395ww(d)(2)(H), resulting in the IPPS payment rates for FFY 1984.

---

[2] Starting in FFY 1995, IPPS used only a single standardized amount as the starting point for IPPS payments to all providers.

[3] The statute also required the Secretary to make a similar budget neutrality adjustment when establishing the FFY 1985 payment rates, but these budget neutrality requirements applied only for FFY 1984 and FFY 1985. 42 U.S.C. § 1395ww(e)(1)(B); *see also St. Mary's I*, 2024 WL 5186641, at *3 ("For fiscal years after 1985, the process would again start with the prior years' average standardized amounts, but as already discussed, the budget neutrality adjustments were halted after the first two years of the new compensation model.").

**E.    The Secretary Invalidly Calculated the Inaugural IPPS Standardized Amounts by Failing to Account for Patient *Transfers* When Calculating the Required "Costs per *Discharge*" Figure, and He Has Never Corrected His Error**

26.    The Secretary acknowledged that the Medicare Act required a specific, multi-step process for calculating the inaugural IPPS standardized amounts. In his Interim Final Rule implementing IPPS, the Secretary stated: "The methodology for arriving at the appropriate [prospective] rate structure is essentially prescribed in the Act in section 1886(d)(2) [42 U.S.C. § 1395ww(d)(2)]. It requires that certain base period cost data be developed and modified in several specified ways (*i.e.*, inflated, standardized, grouped, and adjusted)," resulting in the standardized amounts. FFY 1984 IPPS Interim Final Rule, 48 Fed. Reg. 39,752, 39,763 (Sept. 1, 1983).

27.    Yet in an error that the Secretary to this day has never purported to correct, the Secretary invalidly calculated the average "costs per discharge" figure required by the non-discretionary Step 1 of the process. The root of the Secretary's error was his failure to account for patient *transfers* in his calculation of "average costs per *discharge*." This error caused the resulting IPPS standardized amounts and payments to be understated in FFY 1984 and every FFY thereafter, because the Secretary calculates standardized amounts for each new FFY by updating and applying one or more percentage adjustments to the prior FFY's standardized amount(s).

28.    As stated above, Step 1 of the standardized amount calculation required the Secretary to calculate the "allowable operating costs *per discharge* of inpatient hospital services for . . . the most recent cost reporting period for which data are available," which was 1981. 42 U.S.C. § 1395ww(d)(2)(A) (emphasis added); *see also* 48 Fed. Reg. at 39,763-64. When the Secretary calculated the "costs per discharge," he violated the clear statutory requirement by failing to remove or adjust for patients included in the 1981 base-year data that were not *discharged* from hospital care but instead were *transferred* to another hospital for further care. 48 Fed. Reg.

32

at 39,763-64. Thus, for rate-setting purposes, the Secretary effectively treated *transfers* as if they were *discharges*; and instead of calculating the average costs per discharge as required by statute, the Secretary improperly calculated the average costs per discharge *or transfer*.

29.    In implementing IPPS, the Secretary acknowledged that discharges are distinct from transfers. He defined a "discharge" as a "formal[] release[] from the hospital" and expressly excluded from that definition transfer "cases where a patient is transferred to another hospital paid under the prospective payment system." *See id*. at 39,759. Yet the Secretary did not eliminate or adjust for the "transfers" he distinguished by rule from his calculation of the "costs *per discharge*" figure required by statute. This error caused the standardized amounts to be understated because the average cost for a patient transferred to another hospital for more care was lower than the average cost a hospital would have incurred if it kept the patient from admission until final discharge from hospital care. *See St. Mary's I*, 2024 WL 5186641, at *7 ("The[] claim that the Secretary lumped discharges and transfers together is uncontroverted. 49 Fed. Reg. 234, 245–46 (Jan. 3, 1984). Straightforward arithmetic dictates that this decision would be expected to yield a reduction in the inaugural standardized amounts."). Thus, the standardized amounts as calculated by the Secretary did not accurately reflect the average cost of a typical full course of hospital treatment.

30.    Not only did this rate-setting methodology fail to calculate the "allowable operating *costs per discharge*" as the statute required, 42 U.S.C. § 1395ww(d)(2)(A) (emphasis added), it also directly conflicted with the clear distinction between transfers and discharges that the Secretary implemented for *payment* purposes under IPPS. *See* FFY 1984 IPPS Interim Final Rule, 48 Fed. Reg. at 39,759. For IPPS, the Secretary implemented a payment policy by which hospitals generally would be paid less for transferred patients than for discharged patients because of the

33

lower costs hospitals incurred on transfer cases. *Id.* In justifying this transfer payment policy, the Secretary stated: "The transferring hospital, generally providing a limited amount of treatment to the transferred patient, is not entitled to payment at the full prospective rate." *Id.*

31.     The Secretary did not rationally explain this inconsistent treatment of transfers for rate-setting and payment purposes. The Secretary did not address the treatment of transfer data at all in the FFY 1984 IPPS Interim Final Rule. In the FFY 1984 IPPS Final Rule, the Secretary acknowledged that under IPPS, a "transfer between two hospitals, each of which is subject to the prospective payment system, will not be considered a discharge for the transferring hospital." 49 Fed. Reg. 234, 245-46 (Jan. 3, 1984). He further acknowledged that the data he used to calculate the costs-per-discharge figure included transfer cases. *Id.* But the Secretary refused to correct for this contradiction, stating that "no data were presented to indicate the actual effect, if any, that this difference between the definitions of discharges under the old and new payment system might have on the DRG rates," and asserting—without any supporting data or analysis—that he "would expect any discrepancy between the 'old' and 'new' definitions of discharge to have no significant effect on the rates." *Id.*

32.     Effectively acknowledging this error, the Secretary correctly reversed course on his treatment of transfers when he implemented the prospective payment system for *capital* costs ("Capital PPS") in FFY 1992. Capital PPS payments are based on a standardized amount reflecting the average *capital* costs per discharge, just as the IPPS standardized amount is meant to reflect the average *operating* costs per discharge. In his Proposed Rule for Capital PPS, the Secretary stated his intention to include transfers in the "costs per discharge" calculation for the Capital PPS standardized amounts, just as he had done when implementing IPPS. FFY 1992 Capital PPS Proposed Rule, 56 Fed. Reg. 8,476, 8,481, 8,487 (Feb. 28, 1991). But unlike with IPPS, in the

34

Capital PPS Final Rule, the Secretary reconsidered that position and acknowledged that counting transfers as discharges was improper and would cause an understatement of the standardized amounts. FFY 1992 Capital PPS Final Rule, 56 Fed. Reg. 43,358, 43,383, 43,386-87 (Aug. 30, 1991). The Secretary therefore applied a "correction factor" that removed the effect of transfer cases in the data, which *increased* the costs-per-discharge figure and the resulting Capital PPS standardized amount by 0.9 percent. *Id.* at 43,361, 43,368.

33.    The logic underlying the Secretary's decision to adjust for transfers in the Capital PPS rates was correct—and also applied directly to IPPS. Yet despite having knowledge of his error in FFY 1984 and acknowledging the need to adjust for transfers in FFY 1992, the Secretary never purported to adjust the IPPS standardized amount to correct for his improper inclusion of transfer cases in his calculation of the inaugural IPPS standardized amounts. And because those original standardized amounts are carried forward into future IPPS standardized amounts, the Secretary's original error has perpetuated chronic underpayments to the Hospitals and all other IPPS providers to this day.

**F.    The Incorrectly Low FFY 1984 Standardized Amounts, and the Secretary's Failure to Correct His Original Error, Detrimentally Affected IPPS Payments in FFY 2019**

34.    The original understatement of average costs per discharge affected not only the FFY 1984 standardized amounts; standardized amounts for all subsequent FFYs also were understated. This is because the Secretary calculates the IPPS standardized amount(s) for a given FFY by adjusting the standardized amount(s) from the previous FFY, tracing back to the original FFY 1984 standardized amounts. *See* 42 U.S.C. § 1395ww(d)(3)(A)-(C).

35.    As the D.C. Circuit explained in *Saint Francis Medical Center v. Azar*:

Prospective payment amounts are determined annually, under a statutory formula that depends in part on base rates known as "standardized amounts." *See* 42 U.S.C. § 1395ww(d)(2)(C). In turn, the standardized amounts depend in part on the "allowable operating costs per discharge of inpatient hospital services." *See id*.

§ 1395ww(d)(2)(A). Although prospective payment amounts are adjusted over time in various ways, the standardized amounts themselves are not. *See id*. § 1395ww(d)(3). Those amounts were calculated in 1983, based on hospitals' cost-reporting data from 1981. *See* Prospective Payments for Medicare Inpatient Hospital Services, 48 Fed. Reg. 39,752, 39,763-67 (Sept. 1, 1983). *To this day, therefore, Medicare payments for inpatient services depend in part on factual determinations derived from 1981 data and embedded in 1983 calculations, including the calculation of "allowable operating costs per discharge."*

894 F.3d 290, 291 (D.C. Cir. 2018) (emphasis added). Thus, the Secretary "calculates hospitals' Medicare reimbursements by employing a formula predicated on statistics for hospital discharges in 1981." *Id*. at 297 (Kavanaugh, J, concurring).

36.     When promulgating the FFY 2019 IPPS Final Rule, the Secretary knew that (1) the original FFY 1984 standardized amounts had been improperly calculated without excluding or applying any adjustment for the impact of transfers and (2) the standardized amount for FFY 2019 was based on the original FFY 1984 standardized amounts. In the FFY 2019 IPPS Final Rule, the Secretary acknowledged that the standardized amount determined for FFY 2019 was based on the previous standardized amounts going back to FFY 1984. *See* FFY 2019 IPPS Final Rule, 83 Fed. Reg. 41,144, 41,713 (Aug. 17, 2018) ("In general, the national standardized amount is based on per discharge averages of adjusted hospital costs from a base period (section 1886(d)(2)(A) of the Act [*i.e.*, 42 U.S.C. § 1395ww(d)(2)(A)]), updated and otherwise adjusted in accordance with the provisions of section 1886(d) of the Act [*i.e.*, 42 U.S.C. § 1395ww(d)]."). The Secretary also knew these facts, of course, because in *Saint Francis* (discussed below) he had litigated a case against many of these same Hospitals that involved the same calculation error in the FFY 1984 standardized amounts.

37.     Despite his knowledge of the material error in the original FFY 1984 standardized amounts, which cascaded forward each year, the Secretary did nothing to correct for the impact of

that error when setting the standardized amount in the FFY 2019 IPPS Final Rule, causing underpayments to the Hospitals in that period.

**G.      The Medicare Appeals Process and Expedited Judicial Review**

38.      The Medicare Act allows a provider that is dissatisfied with a "final determination" as to the amount of its IPPS payments for an open FFY to appeal to the PRRB if the provider meets the requirements in 42 U.S.C. § 1395oo(a), including that the "amount in controversy is $10,000 or more," and "such provider files a request for a hearing within . . . 180 days after notice of the Secretary's final determination." 42 U.S.C. § 1395oo(a)(1)(A)(ii), (2), (3). The publication of IPPS rates in the Federal Register, including the standardized amount(s), constitutes a "final determination" that may be appealed to the PRRB under 42 U.S.C. § 1395oo(a). *Battle Creek Health Sys. v. Kennedy*, 151 F.4th 464, 469 (D.C. Cir. 2025). A group of providers may bring such an appeal if the matter in controversy involves a common question of fact or interpretation of law or regulations and the amount in controversy is, in the aggregate, $50,000 or more. 42 U.S.C. § 1395oo(b).

39.      Although the PRRB has broad jurisdiction to consider providers' challenges to IPPS payment determinations, it lacks the authority to adjudicate the validity of the Secretary's regulations and CMS Rulings. 42 C.F.R. § 405.1867. Thus, when a provider's appeal satisfies the jurisdictional requirements for a PRRB hearing, the provider may request that the PRRB determine whether it has the authority to decide the question of law or regulations relevant to the appeal. 42 U.S.C. § 1395oo(f)(l). If the PRRB determines that the legal issues raised are outside the scope of its authority, it must certify the appeal for "expedited judicial review" or "EJR." *Id*. In that event, the provider has exhausted its administrative remedies, the Secretary's payment determination is final, and the provider may commence a civil action for judicial review of the final payment determination of the Secretary. *See* 42 U.S.C. § 1395oo(f)(1); 42 C.F.R. § 405.1842.

40.     In any of the foregoing court actions, and here, the Secretary is the proper defendant. *See* 42 C.F.R. § 405.1877(a)(1). Under 42 U.S.C. § 1395oo(f)(2), interest is to be awarded in favor of a hospital that prevails in an action brought under 42 U.S.C. § 1395oo(f). In addition, under 42 U.S.C. § 1395g(d), CMS is required to pay interest on underpayments to Medicare providers, if the underpayment is not paid within thirty days of a "final determination."

## STATEMENT OF FACTS SPECIFIC TO THESE HOSPITALS

### A.     The Hospitals' Decades-Long Effort to Obtain Judicial Review

41.     As the D.C. Circuit noted in *Saint Francis*, many of the Hospitals have "pursued this issue in various appeals to the PRRB filed as early as 2005." 894 F.3d at 293.

42.     Leading up to 2013, the Secretary took the position that hospitals could not challenge their Medicare reimbursements for open cost years based on alleged errors in "predicate facts"—factual determinations that affect the challenged payments for open costs years but were made in prior, closed cost years. *See id.* The D.C. Circuit rejected this position in *Kaiser Foundation Hospital v. Sebelius*, holding that Medicare regulations permit "modification of predicate facts in closed years provided the change will only impact the total reimbursement determination in open years." 708 F.3d 226, 232-33 (D.C. Cir. 2013).

43.     In response to *Kaiser*, the Secretary revised 42 C.F.R. § 405.1885, the regulation governing requests for the "reopening" of a payment decision (the "2013 Reopening Revision"), in an attempt to foreclose the correction of predicate facts more than three years after those facts were established or first used. 78 Fed. Reg. 74,826, 75,162 (Dec. 10, 2013) (final rule). Based on the 2013 Reopening Revision, the PRRB dismissed appeals filed by many of these Hospitals challenging the same issue for earlier fiscal years. *See Saint Francis*, 894 F.3d at 293. In 2018, the D.C. Circuit reversed the dismissals, holding in *Saint Francis* that the 2013 Reopening Revision applied only to administrative reopenings, not to PRRB appeals like the ones brought in that case

and by the Hospitals here. *Id.* at 297. Thus, *Saint Francis* and *Kaiser* confirm that the Hospitals are permitted to seek correction of erroneous facts from a closed cost year to ensure that their properly appealed FFY 2019 IPPS payments are correct.

44.    Nearly five years after *Saint Francis*, the PRRB asserted a new jurisdictional hurdle to these claims. In April 2023, the PRRB issued a decision dismissing the group appeals underlying this action, asserting for the first time that 42 U.S.C. § 1395ww(d)(7) and related provisions (the "Budget Neutrality Preclusion Provisions" or "Preclusion Provisions") strip administrative and judicial review of claims challenging the Secretary's failure to remove or adjust for transfers in his inaugural standardized amount calculation. *See St Mary's I*, 2024 WL 5186641, at *5. As discussed in more detail below, this Court rejected the PRRB's position on appeal and held that the Budget Neutrality Preclusion Provisions do not apply to appeals raising this issue, paving the way for the Hospitals to finally obtain judicial review of the merits of their claims.

**B.    Administrative Procedural Background for These PRRB Appeals**

45.    This action arises from five PRRB Common Issue Related Party Group Appeals: PRRB Case Nos. 19-1723GC, 19-1735GC, 19-1763GC, 19-0233GC, and 19-1628GC (collectively, the "Group Appeals"). The Group Appeals challenge the Hospitals' respective IPPS payments for FFY 2019 on the grounds that those payments are improperly understated because of the Secretary's failure to adjust the standardized amount to correct for the errors he made in calculating the inaugural standardized amounts.

39

46.    In each of the Group Appeals, the Hospitals satisfied all jurisdictional requirements set forth in 42 U.S.C. § 1395oo(a)-(b); *e.g.*, the Hospitals timely appealed the FFY 2019 IPPS Final Rule,[4] and the amount in controversy far exceeds the $50,000 minimum threshold.

47.    On August 10, 2020, the Hospitals originally filed EJR requests in each of the Group Appeals.

48.    On October 27, 2021—following additional briefing submitted at the request of the PRRB—the PRRB denied the EJR requests on the basis of inadequate information, and it instructed the parties to respond to 15 pages of additional questions that it described as addressing "both whether EJR is appropriate as well as whether the Board has jurisdiction."

49.    By a letter dated November 12, 2021, the Hospitals asked the CMS Administrator to review the jurisdictional component of the PRRB's October 27, 2021 decision denying the Hospitals' EJR requests. By a letter dated December 22, 2021, the CMS Administrator declined to review the PRRB's October 27, 2021 decision.

50.    On February 5, 2022, and again on March 18, 2022, the Hospitals timely provided responses to the PRRB's October 27, 2021 "Request for Information" letter.

51.    Between May and June, 2022, the MACs filed challenges—commonly known as "Substantive Claim Challenges"—asserting that some (but not all) Hospitals in the LifePoint Group Appeal (No. 19-1735GC), the CHS Group Appeal (No. 19-1763GC), and the Quorum Group Appeal (No. 19-0233GC) failed to include "an appropriate claim for the specific item" on appeal as purportedly required by regulations including 42 C.F.R §§ 413.24(j) and 405.1873 (the "Substantive Claim Regulations"). The challenged Hospitals timely filed responses (the

---

[4] Medicare Program; Hospital Inpatient Prospective Payment Systems for Acute Care Hospitals and the Long-Term Care Hospital Prospective Payment System and Policy Changes and Fiscal Year 2019 Rates, 83 Fed. Reg. 41,144 (Aug. 17, 2018) ("the FFY 2019 IPPS Final Rule").

"Substantive Claim Responses") demonstrating that the Substantive Claim Challenges should be rejected because, *inter alia*, the challenges were not timely filed by the MACs; the Substantive Claim Regulations are unlawful and invalid; the Substantive Claim Regulations cannot be applied to Federal Register appeals like the Group Appeals; the Substantive Claim Regulations cannot be applied to appeals, like the Group Appeals, where the providers challenge all IPPS payments; the Secretary and CMS have been aware of the issue asserted in these appeals for nearly two decades; even if the Substantive Claim Regulations were applicable (they are not), the Hospitals satisfied them by submitting claims for all operating IPPS payments, and many of the challenged Hospitals provided actual notice of the claimed costs in their cost reporting documentation.

52. On April 6, 2023, the PRRB issued a "Dismissal Based on Lack of Subject Matter Jurisdiction" (the "Dismissal Decision"), holding for the first time that the Budget Neutrality Preclusion Provisions strip its jurisdiction over the Hospitals' challenges to current-year payments based on the Secretary's improper treatment of transfers in calculating the average "costs per discharge" in the inaugural IPPS standardized amounts for FFY 1984.

53. On June 2, 2023, the Hospitals sought judicial review of the Dismissal Decision by filing *St. Mary's Regional Medical Center v. Becerra*, No. 1:23-cv-1594-RCL, in this Court.

54. On December 20, 2024—following cross-motions for summary judgment—this Court issued a Memorandum and Opinion reversing the Dismissal Decision and holding that the Budget Neutrality Preclusion Provisions do not apply to these Group Appeals. *St. Mary's I*, 2024 WL 5186641. The Court explained that "[a] plain textual reading of the Preclusion Provisions does not evince congressional intent to immunize the Secretary's cost-per-discharge calculation from judicial or administrative review." *Id.* at *11. The Court further held that this "challenge to the inaugural standardized amounts is not inextricably intertwined with the unreviewable budget

neutrality adjustments." *Id.* at *12–17. The Court therefore held that the PRRB "has subject matter jurisdiction over the plaintiffs' challenge," and providers "may seek administrative and judicial review of their predicate fact challenge to the Secretary's inaugural IPPS standardized amount calculation." *Id.* at *17, 19. In its associated Order, the Court ordered that the Group Appeals "be remanded to the appropriate agency authorities for further proceedings consistent with the accompanying Opinion." The Court also observed that the remand "will likely result in certification for expedited judicial review."

55.    On September 26, 2025, the Court issued a Memorandum & Order on a Motion for Clarification or Reconsideration filed by the Secretary. The Court granted the Motion for Clarification or Reconsideration in part, "to the extent that the Secretary seeks to confirm that the Court's holdings are limited to the PRRB's jurisdiction over the dispute," and denied the Motion for Clarification or Reconsideration in part, "insofar as it seeks partial reconsideration of the Court's [D]ecision."

56.    The Secretary did not appeal the Court's *St. Mary's I* decision.

57.    On January 23, 2026—following multiple requests by the Hospitals—the CMS Administrator issued an Order that, *inter alia*, vacated the PRRB's April 6, 2023, Dismissal Decision and ordered the PRRB to reinstate the Group Appeals and resume proceedings in accordance with this Court's opinions and orders.

58.    On March 3, 2026, the PRRB issued a Notice of Reopening in the Group Appeals, in which it reinstated the Hospitals' prior requests for EJR and set a scheduling order governing the Hospitals' supplementation of the record (as necessary), the Medicare Contractors' response, and the PRRB's resolution of the requests.

59.     On April 2, 2026, the Hospitals filed a Supplement to their Reinstated Request for EJR. In the Supplement, the Hospitals demonstrated that they were entitled to EJR because the PRRB had jurisdiction over the Group Appeals but lacked authority to decide the legal issue under appeal or to grant the relief requested by the Hospitals. The Hospitals also demonstrated that the Substantive Claim Challenges should be rejected for all the reasons stated in the Substantive Claim Responses. The Hospitals requested—in the alternative if the PRRB concluded that the Substantive Claim Regulations applied and any Hospitals failed to satisfy them—that EJR be granted as to the lawfulness, validity, and applicability of the Substantive Claim Regulations.

60.     On April 10, 2026, the MACs filed a Response to the Hospitals' Reinstated Request for EJR.

61.     On April 17, 2026, the Hospitals filed a Reply to the MACs' Response to the Hospital's Reinstated Request for EJR.

62.     On April 30, 2026, the PRRB issued an EJR Determination granting expedited judicial review in the Group Appeals. *See* Exhibit 1. In the majority opinion joined by three of four participating Board members, the PRRB found, *inter alia*, that "[i]t has jurisdiction over the challenges to the calculation of the standardized amounts used in the federal rates for the IPPS during FFY 1984 as it allegedly impacts the [Hospitals'] FFY 2019 IPPS rates and that the [Hospitals] in these group appeals are entitled to a hearing before the Board," but that "[i]t lacks the authority to decide the legal question of whether the [Hospitals'] FFY 2019 IPPS rates are understated because transfers were erroneously included in the calculation of the standardized amounts used in federal rates for the IPPS during FFY 1984." *Id.* at 29-30. Accordingly, the PRRB "conclude[d] that the question of whether the [Hospitals'] FFY 2019 IPPS rates are understated falls within the provisions of 42 U.S.C. § 1395oo(f)(1), and in accordance with 42 C.F.R.

43

§405.1842(f)(1), hereby grant[ed] the [Hospitals'] request for EJR for the issue and the subject year[]." *Id.* at 30.

63.    As to the Substantive Claim Challenges, the PRRB issued findings that some (but not all) of the challenged Hospitals "failed to include 'an appropriate claim for the specific item' that is the subject of their respective group appeals as required under 42 C.F.R. § 413.24(j)(1)."[5] *Id.* at 29-30. The PRRB did not include the lawfulness, validity, and applicability of the Substantive Claim Regulations in the issues certified for EJR. *Id.*

64.    As permitted by 42 U.S.C. § 1395oo(f)(1), the Hospitals now file this civil action within 60 days of the PRRB's EJR Determination.

## THE ADMINISTRATIVE PROCEDURE ACT

65.    Under 42 U.S.C. § 1395oo(f)(1), review of a final decision of the Secretary "shall be tried pursuant to the applicable provisions under chapter 7 of title 5" of the U.S. Code, which contains the APA, 5 U.S.C. § 551, *et seq*.

66.    Under the APA, a "reviewing court shall . . . hold unlawful and set aside agency action, findings, and conclusions found to be (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; . . . (C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right; (D) without observance of procedure required by law; [or] (E) unsupported by substantial evidence. . . ." *Id.* § 706(2).

67.    In *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369 (2024), the Supreme Court overturned the doctrine of *Chevron* deference and voiced a full-throated reaffirmation of the

---

[5] The Hospitals for which the PRRB made an adverse finding under the Substantive Claim Regulations are identified in the April 30, 2026, EJR Determination. Ex. 1 at 11-19, 29-30.

traditional role of federal courts in reviewing agency action. Chief Justice Roberts described the proper scope of review under the APA:

> The APA thus codifies for agency cases the unremarkable, yet elemental proposition reflected by judicial practice dating back to *Marbury*: that courts decide legal questions by applying their own judgment. It specifies that courts, not agencies, will decide "*all* relevant questions of law" arising on review of agency action, §706 (emphasis added)—even those involving ambiguous laws—and set aside any such action inconsistent with the law as they interpret it. And it prescribes no deferential standard for courts to employ in answering those legal questions.

*Id.* at 392.

68.     The Secretary's final determination of the standardized amount for FFY 2019 is unlawful and should be set aside for at least the reasons set forth below.

## COUNT I
### Judicial Review Under the Medicare Act and the APA
### (Secretary's Actions Are Contrary to Statutory Law Under the Medicare Act)

69.     The Hospitals hereby incorporate by reference all preceding paragraphs of this Complaint.

70.     Agencies may not act "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right" or otherwise "not in accordance with law." 5 U.S.C. § 706(2)(A), (C).

71.     The Secretary's actions adopting a flawed standardized amount for FFY 2019, without correcting for his failure to follow the statutory directive to calculate average "costs per discharge" for the original FFY 1984 standardized amounts, are contrary to the Medicare Act. Accordingly, the Secretary's resulting FFY 2019 payment determinations relating to the Hospitals must be recalculated because they violate the plain meaning of the statute. The Medicare Act unambiguously imposed a non-discretionary requirement that the Secretary calculate the original standardized amounts for FFY 1984 based on the "allowable operating costs per discharge of inpatient hospital services." 42 U.S.C. § 1395ww(d)(2)(A). The Secretary violated this clear

45

directive by calculating the average costs per discharge *or transfer* instead of the required "costs per discharge" figure.

72.    Treating transfers as discharges when calculating the average costs per discharge and standardized amounts in the initial IPPS rulemaking, effective for FFY 1984 IPPS payments, also violated the clear purpose of the Medicare IPPS statute. Congress intended IPPS payments to be determined by multiplying a figure representing the average cost of a full course of hospital treatment (*i.e.*, the standardized amount) by factors reflecting the relative costliness of a given patient. But because the Secretary miscalculated the average cost of a typical course of treatment, the IPPS payment formula was—and continues to be—inherently skewed downward.

### COUNT II
**Judicial Review Under the Medicare Act and the APA**
**(Secretary's Actions Are Contrary to Statutory Law Because the Secretary Failed to Observe Required Procedure Under the APA and the Medicare Act)**

73.    The Hospitals hereby incorporate by reference all preceding paragraphs of this Complaint.

74.    The Secretary's actions adopting and perpetuating a flawed standardized amount, without following or correcting for his failure to follow the statutory directive to calculate average "costs per discharge" for the original FFY 1984 standardized amounts, are contrary to law because the Secretary failed to comply with applicable procedural rulemaking requirements in the APA and the Medicare Act in many ways, including by failing to explain adequately the decisions not to correct for the understated standardized amounts.

75.    In FFY 1984, the Secretary failed to provide any satisfactory explanation for his inconsistent treatment of transfers for rate-setting versus payment purposes. He did not address the treatment of transfers in his Interim Final Rule. And in his Final Rule, the Secretary's assumption that "any discrepancy" caused by treating transfers as if they were discharges would not have a

"significant effect on the rates," 49 Fed. Reg. at 246, was not supported by any data or analysis, and it was belied by the Secretary's adoption of a policy to pay less for transfer cases.

76.     The Secretary further acknowledged at the time he implemented Capital PPS that counting transfers as discharges for purposes of calculating the average costs-per-discharge figure was "problematic" and would result in an understatement of the resulting standardized amount. *See* 56 Fed. Reg. at 43,368. Yet that is exactly what the Secretary did when he calculated the inaugural standardized amounts for IPPS, and he has not yet corrected for that error despite repeated opportunities and requests to do so.

77.     When promulgating the FFY 2019 IPPS Final Rule, the Secretary knew that (a) the original FFY 1984 standardized amounts had been improperly calculated without excluding or otherwise adjusting for the impact of transfers and (b) the standardized amount for FFY 2019 was based on the original FFY 1984 standardized amounts.

78.     Despite knowledge of the material error in the original FFY 1984 standardized amounts, which cascaded forward each year, the Secretary did nothing to correct for the impact of that error when setting the standardized amount in the FFY 2019 IPPS Final Rule. Nor did he reasonably explain his failure to correct for the error. Thus, the Secretary's rulemaking setting the standardized amount for FFY 2019 was contrary to law and procedurally invalid because, among other matters, the Secretary failed to adequately explain his actions or point to any data or analysis to support his approach.

## COUNT III
**Judicial Review Under the Medicare Act and the APA**
**(Secretary's Actions Are Arbitrary, Capricious, an Abuse of Discretion, Not in Accordance with Law, and Unsupported by Substantial Evidence in Violation of the APA and the Medicare Act)**

79.     The Hospitals hereby incorporate by reference all preceding paragraphs of this Complaint.

47

80.    The APA requires a reviewing court to hold unlawful and set aside agency action, findings, and conclusions that are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," or "unsupported by substantial evidence." 5 U.S.C. § 706(2)(A), (E).

81.    The Secretary's actions adopting a flawed standardized amount for FFY 2019, without correcting for his failure to follow the statutory directive to calculate average "costs per discharge" for the original FFY 1984 standardized amounts, are arbitrary, capricious, an abuse of discretion, not in accordance with law, and unsupported by substantial evidence.

82.    The Secretary acted arbitrarily in calculating the inaugural standardized amounts because his failure to remove or adjust for transfers in the costs-per-discharge calculation was contrary to statute and ran counter to the evidence before him. The Secretary further acted arbitrarily in treating transfers as if they were discharges for rate-setting purposes but treating transfers differently from discharges for payment purposes, which caused the Secretary to undercompensate IPPS providers on the whole.

83.    The Secretary also failed to rationally explain this inconsistent treatment. The explanation that he did offer—that conflating transfers and discharges for rate-setting purposes would not have a significant effect on payments—was belied by his own rationale for his policy to pay transfers less (on average) than full discharges. The Secretary's conclusory explanation was further exposed by his decision to apply a "correction factor" to the inaugural Capital PPS standardized amount to eliminate the effect of transfer data in the costs-per-discharge analysis under that parallel portion of the Medicare Act. The Secretary also failed to consider relevant factors, data, and alternative methodologies in establishing the inaugural IPPS standardized amounts, and he failed to demonstrate a reasonable connection between the standardized amounts and the factors and data he did consider.

84.     The Secretary also acted in a manner that was arbitrary and capricious, an abuse of his discretion, not in accordance with law, and unsupported by substantial evidence when—despite knowledge of the material error in the original FFY 1984 standardized amounts, which cascaded forward each year—he did nothing to correct for the impact of that error when setting the standardized amount for FFY 2019. As then-Judge (now Justice) Kavanaugh explained in his concurring opinion in *Saint Francis*, "it would seem to be the very definition of arbitrary and capricious for HHS to knowingly use false facts when calculating hospital reimbursements." 894 F.3d at 298 (Kavanaugh, J., concurring).

**COUNT IV**
**Mandamus**
**(The Hospitals' IPPS Payments Are Unlawful and Must be Corrected)**

85.     The Hospitals hereby incorporate by reference all preceding paragraphs of this Complaint.

86.     Under 28 U.S.C. § 1361, federal district courts have "original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff."

87.     The Secretary has the non-discretionary duty to apply properly the substantive and procedural laws relating to Medicare payment, including, *inter alia*, to reimburse the Hospitals fully in the amounts to which they are entitled under the law. The Secretary violated this non-discretionary duty by setting the FFY 2019 standardized amount without correcting for the understatement caused by his original failure to follow the clear statutory directive to calculate the average costs per discharge in calculating the original IPPS standardized amounts.

88.     The Hospitals are entitled to a writ of mandamus under 28 U.S.C. § 1361 directing the Secretary to recalculate the Hospitals' FFY 2019 IPPS payments after correcting for the effect

of the Secretary's failure to exclude or adjust for transfers in calculating the average costs per discharge in his calculation of the original IPPS standardized amounts.

## COUNT V
### All Writs Act

89.    The Hospitals hereby incorporate by reference all preceding paragraphs of this Complaint.

90.    The Secretary violated the Medicare Act and APA by failing to correct underlying errors in the FFY 1984 standardized amount calculation and by unlawfully calculating the Hospitals' IPPS payments for FFY 2019. Under the All Writs Act and other authority, the Hospitals are entitled to an order requiring the Secretary to make proper IPPS payments to the Hospitals and to pay appropriate interest on the underpayments. *See* 28 U.S.C. § 1651, 42 U.S.C. §§ 1395oo(f)(2), 1395g(d), 1395l(j); 42 C.F.R. § 405.378.

## COUNT VI
### Judicial Review Under the Medicare Act and the APA
**(Substantive Claim Regulations Are Contrary to Statute, Arbitrary, Capricious, an Abuse of Discretion, Not in Accordance with Law, and Were Not Promulgated According to Procedural Requirements in Violation of the APA and the Medicare)**

91.    The Hospitals hereby incorporate by reference all preceding paragraphs of this Complaint.

92.    The Substantive Claim Regulations, including 42 C.F.R. §§ 413.24(j) and 405.1873, are invalid under the Administrative Procedure Act because they are arbitrary, capricious, an abuse of discretion, otherwise not in accordance with law, in excess of statutory authority, and were promulgated without observance of procedure required by law.

93.    Through 42 U.S.C. § 1395oo, Congress granted express appeal rights to IPPS providers and express authority to the PRRB and the courts to hear those appeals and affirm, modify, or reverse the final determinations challenged on appeal.

50

94.     The Substantive Claim Regulations improperly purport to limit the rights and authority granted by 42 U.S.C. § 1395oo. For example, the Substantive Claim Regulations state that, "[i]n order for a provider to receive or potentially qualify for reimbursement for a specific item for its cost reporting period, the provider's cost report . . . must include an appropriate claim for the specific item, by either—(i) Claiming full reimbursement in the provider's cost report for the specific item in accordance with Medicare policy, if the provider seeks payment for the item that it believes comports with program policy; or (ii) Self-disallowing the specific item in the provider's cost report, if the provider seeks payment that it believes may not be allowable or may not comport with Medicare policy . . . ." 42 C.F.R. § 413.24(j)(1). The Substantive Claim Regulations further state that, if the PRRB determines in a final and binding EJR decision that a provider did not include an appropriate claim for the specific item under appeal, the specific item is not reimbursable unless the PRRB's factual findings and legal conclusions are reversed or modified. 42 C.F.R. § 405.1873(f)(2). These requirements for reimbursement are not found anywhere in—and are directly contrary to—the appeal rights conferred by 42 U.S.C. § 1395oo.

95.     The Supreme Court has rejected the Secretary's prior similar efforts to restrict IPPS providers' statutory appeal rights by requiring them to present futile claims or self-disallow regulatory challenges. *Bethesda Hosp. Ass'n v. Bowen*, 485 U.S. 399, 401-04 (1988); *see also Banner Heart Hosp. v. Burwell*, 201 F. Supp. 3d 131, 142 (D.D.C. 2016). The Substantive Claim Regulations are the same in all material respects to the Secretary's previously rejected efforts: although framed as "substantive" reimbursement requirements rather than express jurisdictional bars, they impose the same unlawful condition by constraining the statutory appeal rights of providers and the authority of the PRRB and the courts where the provider did not claim or protest

51

an issue on its cost report even when doing so would be futile, impossible, unnecessary, or contrary to the statutory scheme.

96.     The Secretary's promulgation of the Substantive Claim Regulations was also arbitrary and capricious because he failed to adequately explain his departure from the statutory appeal framework, failed to account for the PRRB's and the courts' authority to decide matters related to final payment determinations, failed to consider that Medicare contractors cannot resolve challenges to binding regulations or payment policies, and relied on rationales that do not apply to such regulatory challenges. The Secretary further failed to satisfy applicable procedural requirements in promulgating the Substantive Claim Regulations, including the Medicare Act and APA requirements for adequate notice and opportunity for comment.

97.     The Secretary's attempt in the Substantive Claim Regulations to undermine the rights conferred by 42 U.S.C. § 1395oo and circumvent the holdings in *Bethesda* and *Banner Heart Hospital* must be reversed or set aside.

## COUNT VII
### Judicial Review Under the Medicare Act and the APA
### (Application of Substantive Claim Regulations to The Group Appeals Was Arbitrary, Capricious, an Abuse of Discretion, Not in Accordance with Law, and Not Supported by Substantial Evidence)

98.     The Hospitals hereby incorporate by reference all preceding paragraphs of this Complaint.

99.     The PRRB's application of the Substantive Claim Regulations to the challenged Providers in the Group Appeals and its related factual findings and legal conclusions were arbitrary, capricious, an abuse of discretion, otherwise not in accordance with law, in excess of statutory authority, and unsupported by substantial evidence, including because:

a.     The Substantive Claim Challenges were untimely under the PRRB Rules;

b.     The Group Appeals are Federal Register appeals, which must be filed within

52

180 days of the Secretary's final Federal Register determinations, before the relevant cost reports were due or could have contained the protests the MAC later demanded. Requiring cost-report protests in those circumstances would make compliance impossible, render providers' statutory appeal rights contingent on later-filed cost reports, and extinguish those rights before they could be exercised;

c.    The Group Appeals challenge across-the-board payment determinations rather than any discrete "specific item" of reimbursement; and

d.    The Hospitals satisfied any applicable claim requirement by claiming all amounts due under law, timely filing the Group Appeals, putting the Secretary and CMS on notice of the challenged issues, and, for many of the challenged Hospitals, submitting issue statements, cumulative protested amounts, transmittal letters, workpapers, and other cost-report materials sufficient to identify and preserve the claims. The PRRB erred in concluding that these statements and materials were insufficient.

## REQUEST FOR RELIEF

WHEREFORE, the Hospitals request:

a.    An order declaring that the FFY 2019 standardized amount was improperly understated and the Hospitals are entitled to receive for FFY 2019 the additional Medicare IPPS payments to which they would have been entitled if the Secretary had not acted unlawfully;

b.    An order remanding this action back to the Secretary to (a) remove the effect of the FFY 1984 predicate fact error and determine the proper standardized amount for FFY 2019, and (b) calculate the amounts owed to the Hospitals and to make prompt payment of any additional amounts due, plus interest calculated in accordance with 42 U.S.C.

§ 1395oo(f)(2) and/or 42 U.S.C. § 1395g(d);

c.    In the alternative, issuance of a writ of mandamus directing the Secretary to recalculate the Hospitals' FFY 2019 IPPS payments after correcting for the effect of the Secretary's failure to exclude or adjust for transfers in calculating the average costs per discharge in his calculation of the original standardized amounts, plus interest;

d.    An order declaring that the Substantive Claim Regulations are unlawful and must be vacated or, in the alternative, declaring erroneous and reversing the PRRB's factual findings and legal conclusions applying the Substantive Claim Regulations to any Hospitals in the Group Appeals.

e.    Costs of suit incurred by the Hospitals, including reasonable attorneys' fees; and

f.    Such other relief as the Court may deem just and proper.

Dated June 25, 2026

Respectfully submitted,

*/s/ Stephen A. Calhoun* _____

Stephen A. Calhoun
  (D.D.C. Bar # TX047)
Edgar C. Morrison, Jr.
  (D.D.C. Bar # TX0166)
JACKSON WALKER L.L.P.
112 E. Pecan Street, Suite 2400
San Antonio, Texas 78205
Tel: (210) 978-7780
Fax: (210) 242-4619
jmorrison@jw.com
scalhoun@jw.com

*Counsel for Plaintiffs*